# EXHIBIT A



CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2005 JAN 26  PM 4: 16

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE: Owens Corning, et al.                   :
                                               :
_____        :
                                               :
Credit Suisse First Boston,                    :
                          Movant,              :
                                               :        Civil Action No. 05-40 JPF
            v.                                 :        Bankr. Case No. 00-3837 JKF
                                               :        Related to Bankr. Case Docket No. 14181
Certain Physicians,                            :
                          Respondent.   :
                                               :
_____        :

## DEBTORS' RESPONSE TO
## CSFB'S MOTION FOR WITHDRAWAL OF REFERENCE

Owens Corning and its affiliated debtors and debtors-in-possession in these

chapter 11 cases (collectively, the "Debtors") hereby respond to CSFB's Motion for

Withdrawal of Reference (the "Withdrawal Motion") with Respect to Motion for Order

Authorizing CSFB to Commence an Adversary Proceeding on Behalf of the Debtors'

Estates Against Certain Physicians Who Falsely Reported X-Ray Readings as Positive

for Asbestos-Related Impairment (the "Motion to Commence an Adversary Proceeding")

as follows:

Although both this Court and the Bankruptcy Court clearly are well-qualified to

consider and decide the Motion to Commence an Adversary Proceeding, the Debtors do

not believe that CSFB has met its burden of proving "cause" for withdrawal of the

reference as required by 28 U.S.C. § 157(d). While permissive withdrawal of the

reference is subject to the District Court's discretion, this discretion must be exercised

with restraint:

> it is evident that although Congress intended to avoid the
> jurisdictional problems evinced by *Marathon*, it did not
> intend for the indiscriminate withdrawal of the reference
> from the bankruptcy courts. Conversely, Congress
> intended to develop a means to reduce the caseload of the
> district courts, to create a specialized court to handle core
> bankruptcy proceedings efficiently and to preserve the
> specialized authority of the Article I bankruptcy judges
> over core bankruptcy proceedings while protecting the
> district courts' supervisory powers.

*In re Pruitt*, 910 F.2d 1160, 1170 (3rd Cir. 1990) (concurring opinion). CSFB's Motion

to Commence an Adversary Proceeding is a classic "core proceeding" of a type routinely

decided by the Bankruptcy Court.[1] The Withdrawal Motion provides no compelling

reason why such motion should be decided by this Court, rather than the Bankruptcy

Court.

Moreover, while the allegations in the proposed adversary complaint relate to

asbestos, they are not relevant to the estimation proceedings, for which the hearing has

already been held.

---

[1]    CSFB also filed a Motion for Determination of Core or Non-Core Status and a
Motion for an Order Authorizing it to Commence an Adversary Proceeding on
Behalf of the Debtors' Estates in the Bankruptcy Court), which are pending before
the Bankruptcy Court. The Debtors' responses to these motions are not due until
February 11, 2005, at which time the Debtors will address the merits of the core and
non-core issues, as well as the merits of the underlying motion to bring an adversary
proceeding on behalf of the Debtors' estates.

Finally, it is noteworthy that CSFB did not include in any of its pleadings, either to this Court or the Bankruptcy Court, the Debtors' response to its request that the Debtor institute an action against particular B-Readers. That response is attached hereto as Exhibit A.

WHEREFORE, the Debtors respectfully submit that the Withdrawal Motion should be denied for the reasons stated above.

Dated: January 26, 2005

Respectfully submitted,

SAUL EWING LLP

_____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
222 Delaware Avenue
P.O. Box 1266
Wilmington, Delaware 19899-1266
(302) 421-6800

Counsel for Debtors and
Debtors-in-Possession

and

DEBEVOISE & PLIMPTON LLP
Roger E. Podesta
Mary Beth Hogan
919 Third Avenue
New York, New York 10022
(212) 909-6000

Special Counsel for Debtors and
Debtors-in-Possession

3

# EXHIBIT A

DEBEVOISE & PLIMPTON LLP

919 Third Avenue
New York, NY 10022
Tel  212 909 6000
www.debevoise.com

Roger E. Podesta
Partner
Tel  212 909 6213
Fax  212 909 6836
rcpodesta@debevoise.com

January 10, 2005

BY FAX AND REGULAR MAIL

Barry R. Ostrager, Esq.
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, New York 10017

### Proposed Complaint:  Owens Corning v. Raymond A. Harron, et al.

Dear Mr. Ostrager:

      This is in response to your December 20, 2004 letter on behalf of CSFB requesting that Owens Corning initiate suit against Dr. Raymond A. Harron and certain other B-readers providing X-ray reports on behalf of asbestos personal injury plaintiffs (collectively, "Defendants").  Mr. Krull, Mr. Pernick and I appreciated the opportunity to meet with you and your colleagues on January 4, 2005 to discuss CSFB's proposed allegations.

      As we indicated at the meeting, Owens Corning is not opposed in principle to commencement of litigation against the Defendants or any other B-readers who can be shown to have engaged in fraudulent practices.  As you know, Owens Corning commenced RICO lawsuits (the *Pitts* and *McNeese* lawsuits) in 1996 and 1997 against certain testing laboratories and Dr. Larry Mitchell that had conducted thousands of pulmonary function tests that Owens Corning believed to be fraudulent.  Several of CSFB's proposed Defendants had provided X-ray readings to the named defendants in those lawsuits and gave depositions in that litigation.

      At that time, Owens Corning seriously considered suing several of CSFB's proposed Defendants (particularly Dr. Harron).  However, after consultation with its outside counsel, including its lead counsel Dan Webb of Winston & Strawn, Owens Corning concluded that ILO X-ray readings were too subjective, and that the variations in X-ray interpretations between legitimate B-readers were too substantial, to make out an attractive fraud case.  Thus, Owens Corning made a deliberate strategic decision to focus the *Pitts* and *McNeese* lawsuits primarily on pulmonary function testing that it believed could be shown to be objectively fraudulent.

Barry R. Ostrager, Esq.                    2                    January 10, 2005

Given the thorough consideration that it gave to suing the B-readers at that time, and given the substantial statute of limitations problems that have arisen with the passage of time, Owens Corning is reluctant to bring suit against the proposed Defendants in the absence of significant new evidence of fraud. In that regard, we noted the allegation in paragraph 35 of CSFB's proposed complaint that the Defendants received greater compensation for positive X-ray readings finding disease than for negative readings. Owens Corning tried unsuccessfully to develop such evidence in the discovery it conducted in its RICO lawsuits. At our meeting, you were unable to provide us with any specific factual substantiation for CSFB's proposed allegation.

As we informed you at the meeting, several of the proposed Defendants have allegedly been involved with questionable screening practices in silica cases now consolidated in MDL 1553 before Judge Jack in Corpus Christi, Texas. As we understand it, Drs. Harron, Segarra and Lucas have been ordered to appear before Judge Jack for deposition in the middle of February. Owens Corning intends to review the deposition transcripts to see if they reveal any fraudulent practices that may previously have been concealed from Owens Corning.

Owens Corning's experience in the RICO litigation indicates that allegations such as those proposed by CSFB are likely to be bitterly contested and that the potential legal costs of pursuing such claims against individual Defendants may well substantially exceed any monetary recoveries. Apparently in recognition of this concern, you informed us at our meeting that CSFB and the members of the Bank Group are prepared to bear the legal costs of litigation against the proposed Defendants and would look to reimbursement from Owens Corning's estate only out of recoveries in the litigation if they were determined to have made a "substantial contribution" to the estate under Section 503 of the Bankruptcy Code. We acknowledge this representation but it does not eliminate our concerns about potential costs to the Owens Corning estate. In the *McNeese* litigation, the defendants asserted multi-million dollar counterclaims alleging that Owens Corning was trying to deter the filing of legitimate medical claims and to drive the defendants out of business. We think it likely that similar counterclaims would be filed by CSFB's proposed Defendants. Are CSFB and the members of the Bank Group prepared to indemnify Owens Corning and its directors, officers, agents, professionals and employees and hold them harmless from such counterclaims (including any legal fees that may be incurred in defense of such counterclaims)?[*]

In conclusion, at the present time and on the existing state of knowledge, Owens Corning is not prepared to file the proposed CSFB complaint. Given the serious statute

---

[*]    Owens Corning is searching for the settlement agreements and releases in the *Pitts* and *McNeese* lawsuits to determine whether or not they may create any complications for pursuit of CSFB's proposed complaint.

Barry R. Ostrager, Esq.                    3                    January 10, 2005

of limitations problems and in the absence of significant new evidence of fraud, Owens
Corning believes that prosecution of the proposed lawsuit would have uncertain prospects
for success, would not be in the best interests of its estate and would amount to little more
than a publicity stunt. At our meeting, you advised us that notwithstanding the serious
legal obstacles to the ultimate success of the proposed lawsuit, the mere filing of the
complaint would yield largely unspecified "collateral benefits" to CSFB and the members
of the Bank Group. We do not believe that such "collateral benefits" can reasonably be
equated with benefits to Owens Corning's estate. More specifically, one of the collateral
benefits that you mentioned was the relevance of these allegations to the upcoming
estimation hearing. We believe that the same allegations and arguments raised in CSFB's
draft complaint are already being raised in the estimation proceeding and will be fully
presented to Judge Fullam, thereby eliminating any alleged collateral benefit of the
proposed lawsuit for the estate and its creditors.

Should CSFB seek leave from the Bankruptcy Court to prosecute the proposed
complaint on behalf of Owens Corning, Owens Corning will inform the Court of the
background of this matter and of its reasons for believing that prosecution of the
complaint is not in the best interests of the estate. Owens Corning may reconsider its
opposition to CSFB's prosecution of the proposed complaint if CSFB and the members
of the Bank Group agree not only to bear the costs of litigation but also to indemnify
Owens Corning, its directors, officers, agents, professionals and employees from any
counterclaims that may be filed by the Defendants.

Sincerely yours,

Roger E. Podesta

cc:    Stephen Krull, Esq.
       Norman L. Pernick, Esq.

21867909v1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE: Owens Corning, et al.                          :
_____                  :
                                                      :
Credit Suisse First Boston,                           :
                              Movant,                 :
                                                      :        Civil Action No. 05-40 JPF
              v.                                      :        Bankr. Case No. 00-3837 JKF
                                                      :        Related to Bankr. Case Docket No. 14181
Certain Physicians,                                   :
                              Respondent.             :
                                                      :
_____                  :

## CERTIFICATE OF SERVICE

I, Norman L. Pernick, Esquire, hereby certify that on January 26, 2005, I caused a

copy of **Debtors' Response To CSFB's Motion For Withdrawal Of Reference** to be

served on the parties listed below in the manner stated.

**VIA HAND DELIVERY:**
Richard S. Cobb, Esquire
Rebecca L. Butcher, Esquire
Landis Rath & Cobb LLP
919 Market Street Suite 600
Wilmington, DE 19801

**VIA FIRST CLASS MAIL:**
Barry R. Ostrager, Esquire
Tyler B. Robinson, Esquire
Robert J. RPfister, Esquire
Katharine E. Nolan, Esquire
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017-3954

SAUL EWING LLP

_____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
222 Delaware Avenue
P.O. Box 1266
Wilmington, Delaware 19899-1266
(302) 421-6800

Counsel for Debtors and
Debtors-in-Possession

514923.2 1/26/05