UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                    .    Case No.  00-3837
                          .
OWENS CORNING, et al.,    .
                          .    USX Tower - 54th Floor
                          .    600 Grant Street
                          .    Pittsburgh, PA 15219
          Debtors.  .
                          .    February 28, 2005
. . . . . . . . . . . . ..    10:31 a.m.


TRANSCRIPT OF HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:         Saul Ewing LLP
                        By:  NORMAN PERNICK, ESQ.
                        222 Delaware Avenue, Suite 1200
                        Wilmington, Delaware  19801


For the OCUC:           By:  GORDON HARRIS, ESQ.
                        (Telephonic appearance)



Audio Operator:         Cathy Younker



Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609)586-2311      Fax No. (609) 587-3599**

```
APPEARANCES (CONT'D):

For Kensington Int'l,       Stutman, Treister & Glatt
Springfield Assoc.,         By:  JOHN SHAFFER, ESQ.
Elliott Management:              ISAAC PACHULSKI, ESQ.
                            1901 Avenue of the Stars, 12th Fl.
                            Los Angeles, California  90067
                            (Telephonic appearance)


For Travelers Casualty
and Surety Co.:             By:  JOSEPH GIBBONS, ESQ.
                            (Telephonic appearance)


For Affiliated FM           Sonnenchein Nath & Rosenthal LLP
Insurance Co., et al.:      By:  ROBERT B. MILLNER, ESQ.
                            Sears Tower, Suite 8000
                            South Wacker Drive
                            Chicago, Illinois  60606
                            (Telephonic appearance)


For Baron & Budd:           Stutzman, Bromberg, Esserman & Plifka,
                            P.C.
                            By:  SANDER ESSERMAN, ESQ.
                            2323 Bryan Street, Suite 2200
                            Dallas, Texas  75201
                            (Telephonic appearance)


For Century Insurance:      By:  GERALD A. STEIN, ESQ.
                            (Telephonic appearance)


For Foster & Sear LLP:      By:  BRUCE WHITE, ESQ.
                            (Telephonic appearance)


For Plaintiffs in           Lowenstein Sandler, PC
Securities Litigation:      By:  IRA M. LEVEE, ESQ.
                            65 Livingston Avenue
                            Roseland, New Jersey  07068
                            (Telephonic appearance)


Counsel to Select           Montgomery, McCracken, Walker &
Asbestos Claimants:         Rhoads, LLP
                            By:  NATALIE RAMSEY, ESQ.
                                 ELIZABETH W. MAGNER, ESQ.
                            128 South Broad Street
                            Philadelphia, Pennsylvania  19109
                            (Telephonic appearance)


For Special Bondholders     Anderson Kill & Olick, P.C.
and Trade Creditors         By:  HOWARD RESSLER, ESQ.
Committee:                  1251 Avenue of the Americas
                            New York, New York  10020-1182
                            (Telephonic appearance)
```

```
APPEARANCES (CONT'D):

For Official Committee    Caplin & Drysdale, Chartered
of Asbestos Claimants:    By:  JULIE DAVIS, ESQ.
                          One Thomas Circle, N.W.
                          Washington, D.C.  20005
                          (Telephonic appearance)


For Claimants John        Binka-White Law Office
and Kathleen Stratton,    By:  STEPHEN OROZA, ESQ.
et al.:                   744 Montgomery Street, Fourth Floor
                          San Francisco, California  94111
                          (Telephonic appearance)


For the Official          Morris, Nichols, Arsht & Tunnell
Unsecured Creditors:      By:  WILLIAM SUDELL, ESQ.
                          1201 North Market Street
                          Wilmington, Delaware  19899-1347


Special Counsel for       Debevoise & Plimpton, LLP
the Debtors:              By:  ROGER PODESTA, ESQ.
                          919 Third Avenue
                          New York, New York  10022-3904


For the Futures           Kaye Scholer
Representative:           By:  EDMUND M. EMRICH ESQ.
                          425 Park Avenue
                          New York, New York  19081


For the Stratton          Archer & Greiner
Claimants:                By:  JOHN FIORELLA, ESQ.
                          1300 North Market Street, Suite 700
                          Wilmington, Delaware  19801


For the Stratton
Class Claimants:          By:  JEFFREY NORTON, ESQ.


For Credit Suisse         Landis, Rath & Cobb
First Boston:             By:  RICHARD COBB, ESQ.
                          919 Market Street, Suite 600
                          Wilmington, Delaware  19801


For Credit Suite          Simpson, Thacher & Bartlett
First Boston:             By:  BARRY OSTRAGER, ESQ.
                          425 Lexington Avenue
                          New York, New York  10017-3054
```

APPEARANCES (CONT'D):

```
For the Futures          Young Conaway Stargatt and Taylor
Representative:          By:  SHARON ZIEG, ESQ.
                         The Brandywine Building, 1000 West St.
                         17th Floor
                         Wilmington, Delaware  19899


For Taylor Ridge         White and Williams
Corp. and Universal      By:  JAMES YODER, ESQ.
Building Products        824 North Market Street, Suite 902
Corp.:                        Wilmington, Delaware  19801-4938


For Kensington,          Potter Anderson and Corroon
Springfield:             By:  DAVID BALDWIN, ESQ.
                         Hercules Plaza
                         1313 N. Market Street
                         Wilmington, Delaware  19899


Local Counsel for        Monzack and Monaco, P.A.
Designated Members of    By:  FRANK MONACO, ESQ.
the Committees:          1201 North Orange Street, Suite 400
                         Wilmington, Delaware  19899-2031


For the Asbestos         Campbell & Levine, P.C.
Claimants Committee:     By:  MARLA ESKIN, ESQ.
                         800 N. King Street, Suite 300
                         Wilmington, Delaware  19801


For Certain Preferred    Loizides & Associates
Shareholders:            By:  CHRIS LOIZIDES, ESQ.
                         Legal Arts Building
                         1225 King Street, Suite 800
                         Wilmington, Delaware  19801
```

1          THE COURT:  Good morning.  This is the matter of

2    Owens Corning.  Can you hear?

3          UNIDENTIFIED ATTORNEY:  Yes, Your Honor.

4          THE COURT:  Mr. Pernick, can you hear?

5          MR. PERNICK:  Yes.  We heard in the courtroom, Your

6    Honor.

7          THE COURT:  All right.  The parties that I have

8    listed to appear by phone are Gordon Harris, John Shaffer,

9    Isaac Pachulski, Joseph Gibbons, Robert Millner, Sander

10   Esserman or David Parsons, Gerald Stein, Bruce White, Ira

11   Levee, Natalie Ramsey, Elizabeth Magner, Howard Ressler, Julie

12   David, and Steve Oroza.  I'll take entries of appearances from

13   those of you in the courtroom, please.

14         MR. PERNICK:  Gordon Pernick on behalf of the

15   debtors, Your Honor.

16         MR. SUDELL:  William Sudell, Morris, Nichols, Arsht &

17   Tunnell, on behalf of the official unsecured creditors

18   committee, Your Honor.  Thank you.

19         MR. PODESTA:  Roger Podesta, special counsel for the

20   debtors.

21         MR. EMRICH:  Edmund Emrich with Kaye Scholer,

22   representing the futures representative.

23         MR. FIORELLA:  John Fiorella of Archer & Greiner,

24   appearing for the Stratton claimants.

25         THE COURT:  I'm sorry, sir.  What was your last name?

**J&J COURT TRANSCRIBERS, INC.**

6

1           MR. FIORELLA:  Fiorella.  F-i-o-r-e-l-l-a.

2           THE COURT:  And who are you representing?

3           MR. FIORELLA:  The Stratton class action claimants.

4           THE COURT:  Thank you.

5           MR. NORTON:  Good morning, Your Honor.  Jeffrey

6  Norton for the Stratton class claimants.

7           MR. COBB:  Good morning, Your Honor.  Richard Cobb on

8  behalf of Credit Suisse First Boston as agent.  With me today,

9  Your Honor, is Mr. Barry Ostrager of the Simpson Thacher and

10 Bartlett firm, also on behalf of CSFB.

11          THE COURT:  Thank you.

12          MS. ZIEG:  Good morning, Your Honor.  Sharon Zieg of

13 Young Conaway Stargatt and Taylor, also on behalf of the

14 futures representative.

15          MR. YODER:  Good morning, Your Honor.  James Yoder of

16 White and Williams on behalf of Taylor Ridge Corporation and

17 Universal Building Products Corporation.

18          MR. BALDWIN:  Good morning, Your Honor.  David

19 Baldwin, Potter Anderson and Corroon, for Kensington,

20 Springfield.  Thank you.

21          MR. MONACO:  Good morning, Your Honor.  Frank Monaco,

22 local counsel for the designated members of the committees.

23          MS. ESKIN:  Good morning, Your Honor.  Marla Eskin,

24 Campbell Levine, for the asbestos claimants committee.

25          THE COURT:  Okay.  Mr. Pernick?


**J&J COURT TRANSCRIBERS, INC.**

1              MR. PERNICK:  Good morning, Your Honor.  Your Honor,

2  let me just go through a summary which was on the amended

3  agenda.  And actually, I think updated even further because of

4  a couple orders that were entered by the Court.  So, just to

5  make sure that our records are the same as the Court's, I have

6  continued to 3/21 number two.  That was the motion for a

7  protective order regarding the trustee motion.  Item number

8  six, there was a certificate of counsel with a form of

9  stipulated order attached.  I think that was filed on Friday.

10  I'm not sure if the Court had a chance to see that, but just to

11  let you know that it was filed.

12              THE COURT:  I haven't seen it.

13              MR. PERNICK:  Okay.  That's on the Hebron sale.

14              THE COURT:  All right.  What does it say?

15              MR. PERNICK:  If I could have one moment, Your Honor,

16  let me just grab that.  There was an objection by the Ohio --

17  just -- I'm sorry, Your Honor.  For the record, it was docket

18  number 14578.  It may help the Court in getting that.  And it

19  is with respect to the sale of real property in Hebron, Ohio.

20  There was an objection of the Ohio State Fire Marshal, and that

21  was filed at docket number 14468.  The parties resolved that

22  objection, and are submitting the proposed order, and that

23  order, in summary, provides for the sale of the Section 363 --

24  pursuant to Section 363.  And pursuant to Section 363(f), and

25  this is in paragraph four of the order, the property is to be

8

1  transferred free and clear of any and all liens, claims,

2  encumbrances, and interests, with all of those to be attaching

3  to the proceeds, and the same priority with the same validity,

4  force, and effect which they now have against the property.

5  Just -- I don't -- nothing in the order, and this is in

6  paragraph four, releases or nullifies any liability on the part

7  of Owens Corning to the State of Ohio to comply with Ohio

8  revised code Section 37-37.88 through 37-37.89, and the rules

9  and regulations promulgated thereunder.  So, there's basically

10  a carve out for those sections for the Ohio State Fire Marshal.

11         THE COURT:  All right.  I will have that order pulled

12  and signed.  That seems to be an appropriate resolution of the

13  objection.

14         MR. PERNICK:  Okay.  And I actually have another copy

15  here, if the Court would like it.  I can give it to Rachel.

16         THE COURT:  No.  I'm going to read it first, Mr.

17  Pernick.  Thanks.  I'll just have it pulled here and sign it,

18  and return it to her later for filing.

19         MR. PERNICK:  Okay.  Thank you.  You entered an order

20  in number seven which was the Foreland stipulation, and also in

21  number eight with respect to the motion to stay the adversary

22  actions.  That was an additional stay of six months.  And there

23  was one point I wanted to just raise on item number eight for

24  the Court.  While the agenda states that the motion to stay the

25  adversaries was uncontested, and as a result the actions were

9

1  stayed in the pretrial conferences also won't be going forward.

2  I wanted to just let the Court know that with respect to Foster

3  and Sear's adversary action, which was number 9A on the agenda,

4  that was not stayed by Court order, and so that's not covered

5  by this order, and we just wanted to clarify that.  Foster and

6  Sear, however, agrees, and we did speak with them before this

7  hearing, that the pretrial with respect to their matter should

8  not go forward today.  And in the event the Court wants a

9  pretrial conference, and the parties agree, that we'll be happy

10 to have that in March, or at any other date that the Court

11 would like to have it.  And I believe that Foster and Sear's

12 counsel is on the phone just to confirm that.

13       THE COURT:  Counsel for Foster and Sear is on the

14 phone?

15       MR. WHITE:  Your Honor, Bruce White appearing on

16 behalf of Foster and Sear.  That's correct.

17       THE COURT:  All right.  So, are you two just going to

18 put it back on the calendar when you think it's appropriate and

19 it's stayed indefinitely, or what?  I'm not clear.

20       MR. PERNICK:  Your Honor, that's correct.  We will

21 put it back on when we believe it's appropriate.

22       THE COURT:  All right.  Thank you.

23       MR. PERNICK:  That would also cover number nine,

24 which were the adversary pretrials, and we assume that those

25 would be stayed pursuant to the order, which leaves with the

1 following matters going forward:  item number one, which is the

2 Mira Vista class certification motion on a status conference

3 basis only; number three, which is the Taylor Ridge Section 362

4 motion, and it was going forward for the purpose of its

5 scheduling an evidentiary hearing only; number four and number

6 five, which are related, the CSFB motion to commence an

7 adversary action, and the motion for a determination of core,

8 non-core, that was number five; number ten, which was the

9 discussion carryover from last time regarding telephonic

10 procedures for hearings; and number 11, which was the emergency

11 motion with respect to trading restrictions.  Unless the Court

12 has a preference, I would propose to just go in the order that

13 they were listed on the agenda.

14          THE COURT:  That's fine.

15          MR. PERNICK:  We'll start with number one, which is

16 the Mira Vista class certification status conference, and Mr.

17 Podesta for the debtor is handling that.

18          MR. PODESTA:  Good morning, Your Honor.  Roger

19 Podesta, for the debtors.  In terms of the Mira Vista class

20 action proceedings, we have completed our fact discovery and

21 the parties have exchanged all their expert reports.  Last week

22 we had a settlement meeting and the plaintiffs have provided us

23 with a written settlement demand, to which the debtors expect

24 to be responding shortly.  So, I think this matter is

25 proceeding along, and I am not aware of any currently pending

11

 1  disputes.

 2         THE COURT:  Okay.  So, you simply want this continued

 3  again?

 4         MR. PODESTA:  Yes.  I believe so.

 5         THE COURT:  How long?

 6         MR. PODESTA:  Let me just consult with counsel for

 7  the plaintiff.

 8         THE COURT:  All right.

 9                     (Pause)

10         MR. PODESTA:  If Mr. Oroza is on the line, I think

11  plaintiff's counsel would like a little input from Mr. Oroza.

12  I think the only issue, Your Honor, is if -- if there has been

13  some thought that we put off the expert witness depositions

14  briefly to explore the possibility of settlement, which might

15  squeeze the plaintiffs on the briefing of the class action -- a

16  briefing, and so we might need a little adjournment down the

17  road of the argument on the class action of -- but I believe

18  that's the only --

19         UNIDENTIFIED ATTORNEY:  That's correct.  We're

20  actually -- we've pushed back the expert discovery to the point

21  where we're going to need to make an adjustment in the

22  schedule.  Even now it's not completely clear that's going to

23  require an adjustment of the hearing date, but if it's pushed

24  back much further we are almost certain we will.  But we're in

25  the process of discussing that, and if we do we can agree

**J&J COURT TRANSCRIBERS, INC.**

1  we'll submit a stipulation.  I would just suggest that we set

2  this for a status on the next month's omnibus calendar, and

3  then we can report on where we stand on that issue.

4        THE COURT:  All right.  That's fine.

5        UNIDENTIFIED ATTORNEY:  Thank you, Your Honor.

6        THE COURT:  So, next month we'll do a status

7  conference at the omnibus hearing, but then it's with the idea

8  of getting an order in place for briefing if you haven't

9  settled.  Is that it?

10       UNIDENTIFIED ATTORNEY:  Yes, Your Honor.

11       THE COURT:  Okay.  Thank you.

12       MR. PERNICK:  Your Honor, that takes us to item

13  number three, which is the motion of Taylor Ridge Corporation

14  and Universal Housing Corporation for the entry of an order

15  pursuant to Section 362, and in the alternative compelling the

16  debtor to assume or reject executory contracts and for the

17  related relief.  And it's on the Court's calendar for a

18  scheduling and evidentiary hearing.  The Court may recall that

19  this action arises out of a condominium development project

20  that was assumed by the condominium counsel, and a claimed

21  indemnification in favor of Taylor Ridge against Reynolds,

22  which is an Owens Corning entity.  They've asked for relief

23  from stay to proceed with that, and, Your Honor, we don't

24  believe actually that an evidentiary hearing is necessary.

25  There may just be a hearing obviously necessary on the

1 underlying merits.  But I believe that Mr. Yoder, and I'm not

2 sure if co-counsel is in Court or on the phone, but would like

3 to speak to why an evidentiary hearing is necessary, and then

4 if the Court agrees we can talk about scheduling that.

5         THE COURT:  All right.  Mr. Yoder?

6         MR. YODER:  Actually, Your Honor -- this is James

7 Yoder on behalf of Taylor Ridge.  I've spoken with co-counsel

8 for the debtor and we're going to attempt to stipulate to the

9 facts to avoid the necessity of an evidentiary hearing.  We

10 haven't had those discussions yet, but at this point I think an

11 argument of an hour would suffice, without having to worry

12 about putting witnesses on.

13         THE COURT:  Okay.  After your stipulations are filed?

14 An argument after the stips are filed?

15         MR. YODER:  Yes.

16         THE COURT:  All right.  Why don't you folks work out

17 a time by which the stipulations will be filed, and also any

18 briefs, and then I'll give you an argument date after I see

19 when your last briefing is due.

20         MR. YODER:  That's fine, Your Honor.  Thank you.

21         THE COURT:  All right.  Then I'll expect to get a

22 certification of counsel from the debtor that will set dates

23 for filing of stips of fact and briefs, and leave a blank space

24 for an argument of -- Mr. Pernick, does the debtor agree it

25 will take an hour?  Should I reserve an hour?

**J&J COURT TRANSCRIBERS, INC.**

1            MR. YODER:  Yes, Your Honor.  We think that's fine.

2    And we also agree, obviously, to talk about a stipulation of

3    facts, which, I apologize, I didn't speak about in the

4    beginning.  But we have spoken about that before the hearing.

5            THE COURT:  Okay.  I will not be doing the argument,

6    since it will take an hour on an omnibus hearing date.  It will

7    be a separate date, and it will be in Pittsburgh.  You folks

8    can decide if you want to do it by phone or come here.  I don't

9    have a preference, since it's an argument.  But I will give you

10   the date for it after I see when your last briefs are due.

11           MR. PERNICK:  Okay.  Thank you, Your Honor.

12           MR. YODER:  Thank you, Your Honor.

13           THE COURT:  Thank you.

14           MR. PERNICK:  That takes us to item numbers four and

15   five, and that's Mr. Ostrager's motion, and on the debtor's

16   behalf Mr. Podesta is handling that.

17           MR. OSTRAGER:  Good morning, Your Honor.

18           THE COURT:  Good morning.

19           MR. OSTRAGER:  I represent Credit Suisse First Boston

20   as agent for the pre-petition bank lenders to Owens Corning.

21   The pre-petition bank lenders wish, pursuant to the Cybergenics

22   case, to commence an adversary proceeding against certain B

23   reader radiologists who we contend are responsible for billions

24   of dollars having been wrongfully paid out, a fact which the

25   debtor apparently doesn't deny.  We've asked the debtor to

1  initiate this action.  The debtor has declined.  The bank

2  lenders are prepared to fund, at their own expense, the

3  prosecution of the action.  The action alleges fraud and

4  negligent misrepresentation.  The allegations of fraud are

5  really, in our judgment, res ipsa issues arising from the

6  Friedman report, which was issued in 2002, and which concluded

7  that it's statistically impossible for the variations in the

8  readings that exist post facto that --

9          THE COURT:  I'm sorry.  You're fading out, Mr.

10 Ostrager.  I'm sorry.

11         MR. OSTRAGER:  I started to say, and I apologize for

12 the acoustics here, that in 2002 a report was issued by

13 Professor Friedman concluding, in essence, that 90 percent of

14 the B readings by the B readers who we proposed to name in this

15 lawsuit were fraudulent, and that it could not be the result of

16 some subjective differences of opinion by one set of B readers

17 and other B readers.  That conclusion was reaffirmed in 2004 by

18 Mr. Gitlin, who also found a 90 percent variation in terms of

19 what objective readings of x-rays showed compared to what

20 proposed defendants' B readings are.  The debtor has alluded in

21 it's --

22         THE COURT:  I'm sorry.  Now I can't hear you at all.

23         MR. OSTRAGER:  Your Honor, with our indulgence, I'm

24 just speaking as loudly as I can into the microphone.

25         THE COURT:  I'm not sure.  I think maybe your papers

1  are covering up part of the speaker.

2          MR. OSTRAGER:  I've moved my papers.

3          THE COURT:  The round disk is the microphone.

4          MR. OSTRAGER:  Okay.

5          THE COURT:  Okay?

6          MR. OSTRAGER:  Can you hear me now, Your Honor?

7          THE COURT:  Yes, I can.  Thank you.

8          MR. OSTRAGER:  To just summarize what I said while my

9  papers were on the microphone, the debtor acknowledges that

10  four B readers who we propose to name as defendants are also

11  involved in silica-related proceedings in Corpus Christi,

12  Texas.  In those proceedings some of the proposed defendants

13  have conceded under oath that their findings were improper, and

14  incorrect, and negligent.  We think that on the basis of the

15  Friedman report, the Gitlin report, these are 2002 and 2004

16  reports, there is no question that there has been improprieties

17  in connection with reports made by the B readers that have

18  resulted in billions of dollars of money being paid out of the

19  estate, and very simply, if billions of dollars has wrongfully

20  been paid out, which is a fact that the debtor doesn't deny,

21  creditors can't be fairly treated, and in --

22          THE COURT:  Well, the issue seems to be, really,

23  comes down to one thing, and that is whether or not there is

24  some indemnity that the banks, as agents, are willing to

25  provide the debtor in the event that counterclaims are filed.

**J&J COURT TRANSCRIBERS, INC.**

1  The debtor has done an analysis, indicated that in its view the

2  suits will cost more than will be recovered for the benefit of

3  the estate, and on top of that that there could be significant

4  counterclaims filed.  That does not appear to be an

5  unreasonable basis upon which to refuse to take the suits

6  forward.

7          So, the question is, if Credit Suisse is that

8  convinced that the debtor is incorrect, then provide an

9  indemnity, or post a letter of credit, or do something that

10 permits the suits to go forward.  And I guess you've got the

11 authority -- I am a little concerned, even under Cybergenics,

12 as to whether a specific creditor group, as opposed to an

13 organized group of creditors such as a creditors committee or

14 an asbestos committee, has the authority to commence the

15 action, but the debtor hasn't raised that issue, so I guess in

16 this instance I may not take that on on my own.

17         But with respect to the debtor's refusal, based on

18 the fact that the claims against the estate could exceed the

19 recovery, that's a legitimate reason for refusing to go

20 forward.  So, if you want to do it, tell the debtor how you're

21 going to either indemnify, or post something that will stand

22 the debtor's estate in good stead so that if, in fact, the

23 recoveries do not exceed the costs, or the recoveries -- or the

24 recoveries are significantly greater than the costs, the

25 debtor's estate will be compensated.  Doing that, then you will

**J&J COURT TRANSCRIBERS, INC.**

1  get your authority.

2          MR. OSTRAGER:  Your Honor, the debtor concedes that a

3  single creditor can sue derivatively, and Your Honor did take

4  note of the fact that the pre-petition bank lenders are

5  prepared to fund this, so there can be no cost to the estate.

6          THE COURT:  Of course there can.  There can be

7  significant cost to the creditors in the estate if

8  counterclaims are filed and you are unsuccessful in the suit.

9  And that's the issue the debtor is raising.  The debtor has a

10 fiduciary duty to all creditors to make sure that estate assets

11 are not wasted.  And by permitting a suit to go forward that

12 could increase the claims exponentially against the benefit to

13 the estate, that's a good reason why the debtor can refuse to

14 go forward.  So, based on the debtor's assertion that that's

15 the issue, either provide an indemnity or figure out how you're

16 going to compensate the estate in the event that that

17 eventuality happens, and then you'll have your authority.

18         MR. OSTRAGER:  Your Honor, the debtor concedes that

19 billions of dollars have been paid out as a result of

20 wrongdoing by the B readers.

21         THE COURT:  Well, I haven't seen that concession.

22         MR. OSTRAGER:  Well --

23         THE COURT:  If it's in the papers, I don't read the

24 papers that way.  But what the debtor has said is they did a

25 study, they agree that there are probably some payments -- I

J&J COURT TRANSCRIBERS, INC.

1  don't recall the billions of dollars, quote, unquote, that may

2  have been improperly paid.  Nonetheless, the cost of recovery

3  may not exceed the counterclaims and other issues that will

4  come back to the estate.  I mean, are these B readers even

5  solvent?  I mean, I don't know whether you're going to pursue

6  somebody if -- if they're going to be subject to judgments in

7  the silica cases, by the time you get in line in priority, are

8  they going to have anything to pay over?

9         MR. OSTRAGER:  Your Honor, the debtor is trying to

10 conflate analyses that the debtor did in 1997 with newly

11 discovered evidence in 2002 and 2004 based on the Friedman

12 report and the Gitlin report.  Now, the debtor concedes that

13 any counterclaims by these B readers would be meritless and I

14 submit to Your Honor that they wouldn't be able to meet the

15 standard of Rule 11.  People who have defrauded the estate out

16 of hundreds of millions or billions of dollars by admittedly

17 and concededly improper B readings do not have a basis for

18 advancing counterclaims, so this whole issue --

19        THE COURT:  Well then, it shouldn't be an issue to

20 indemnify the estate, because you've already concluded that any

21 counterclaim would be meritless, and so it shouldn't be an

22 issue for your clients to decide that, fine, the debtor is

23 wrong, and you'll indemnify the estate.

24        MR. OSTRAGER:  Is it the Court's position that you

25 are going to deny the -- the committee's claim unless there's

**J&J COURT TRANSCRIBERS, INC.**

1  an indemnity?

2          THE COURT:  Well, it's not a committee's claim.  It's

3  the banks as agents claim.

4          MR. OSTRAGER:  Yes, the banks as agent claim.

5          THE COURT:  I am -- I think that's what I'm going to

6  do.  I'm going to hear from the other side, but it seems to me

7  there's some indemnity or some bond.  Something has to be

8  posted to ensure the creditors of the estate that they will not

9  lose as the result of permitting one creditor to go forward

10 with these suits.

11         MR. OSTRAGER:  And the indemnity would be for these

12 baseless counterclaims that the B readers might assert against

13 the estate?

14         THE COURT:  It would be for whatever counterclaims

15 are asserted against the estate as the result of these actions

16 that lead to a judgment against the debtor.  I don't know

17 whether they're baseless.  I haven't heard anything about the

18 merits.  I'm not going to make a determination that they're

19 baseless, number one.  And number two, I don't know who all may

20 file counterclaims.

21         MR. OSTRAGER:  Well, Your Honor, the only people who

22 can presumably file counterclaims are the people who we sue.

23 And the people who we propose to sue are the B readers.  And

24 these are the same B readers who have admitted in Corpus

25 Christi, Texas that they have improperly read silica-related

**J&J COURT TRANSCRIBERS, INC.**

1  x-rays, and these are the same B readers who Mr. Friedman and

2  Mr. Gitlin have concluded couldn't possibly have given honest

3  reads of the --

4          THE COURT:  I understand your argument.  All I'm

5  saying is the debtor is concerned in its fiduciary capacity

6  that undertaking these suits will cost more than the recovery.

7  And the debtor wants to protect the creditors to whom it owes

8  that fiduciary duty from that risk.  So, if Credit Suisse, as

9  agent, is convinced that the debtor is in error and that more

10  funds will indeed come in that will reimburse Credit Suisse for

11  whatever 503 action it may have, or 506 claim, whatever the

12  claim it will have against the estate for assuming these costs,

13  and in fact will compensate creditors, then it should be, I

14  guess, willing to provide that indemnity.  Perhaps the debtor

15  is wrong and Credit Suisse is correct.  And if it is then the

16  indemnity will never be called upon.  But if the debtor is

17  correct and Credit Suisse is wrong, and the indemnities are

18  called upon, or in fact the costs exceed the return to the

19  estate, then Credit Suisse should act at its risk under these

20  circumstances.  That is a reasonable position for the debtor to

21  take.

22          MR. OSTRAGER:  Okay.  I'm going to make the executive

23  decision on behalf of my client that we will indemnify the

24  debtor for any counterclaims that are interposed by the B

25  readers, and that should terminate controversy here because the

**J&J COURT TRANSCRIBERS, INC.**

22

1  debtor doesn't oppose proceeding, and concedes that the

2  counterclaims are largely meritless, and Your Honor, as the

3  gatekeeper, is going to obviously apply Rule 11 to any

4  counterclaims that are asserted.

5           THE COURT:  Well, I'm going to apply Rule 11.  I

6  guess my concern, and what I want to hear from the debtor is

7  whether that does -- that satisfies the debtor's objection.

8           MR. PODESTA:  Your Honor, Roger Podesta for the

9  debtor.  I believe it does satisfy the debtor's objection.  As

10 I understand what Your Honor is saying, Credit Suisse is going

11 to bear the costs of the attorney's fees and expenses incurred

12 in connection with this litigation, and subject to potential

13 reimbursement out of recoveries pursuant to the bankruptcy

14 statute, and is going to indemnify the debtors against all

15 costs and expenses of defending against and judgments against

16 counterclaims, and that would be acceptable to the debtor.

17          THE COURT:  Well, what they said was counterclaims by

18 B readers.

19          MR. PODESTA:  Yes.  Well those, as I understand it,

20 counterclaims by whomever they sue is what I interpreted Mr.

21 Ostrager's statement to be, and he's only proposing to sue B

22 readers.  I think, and I'll discuss this off the record with

23 Mr. Ostrager, I think the silica discovery shows that there

24 should be some distinctions drawn against the -- drawn among

25 the B readers in order to maximize the case.  But I believe

**J&J COURT TRANSCRIBERS, INC.**

23

1   that with an appropriate indemnity we're prepared to go

2   forward.  I do want to correct the record.  The debtor

3   certainly does not concede that there are billions of dollars

4   that have been improperly paid.  We investigated these B

5   readers and tried to control what was being paid on that basis,

6   and excluded some of them from various NSP agreements.  But I

7   will certainly acknowledge that we have long had concern about

8   these B readers, and certainly with respect to Dr. Harron,

9   there has been strong new evidence in the silica hearings held

10  before Judge Jack in Corpus Christi last week, including the

11  adoption of the amazing practice of rendering so-called two for

12  a diagnoses, whereby Dr. Harron would read x-rays for one group

13  of plaintiff's lawyers for asbestosis and find small irregular

14  opacities, and then read either the same x-ray or another x-ray

15  for the same individual for silica plaintiff's lawyers and

16  diagnose silicosis based on large rounded opacities without

17  ever once referencing the other.  I think that's a problem.

18  But the issue on recovery is that we had similar serious

19  problems with the Pitts cases, and attorney's fees wound up

20  three times the dollar recovery in settlement, and Mr. -- Dr.

21  Harron would be the principal defendant, a 73 year-old

22  radiologist from West Virginia, who no longer has an active

23  practice, and I don't think a malpractice claim is going to

24  cover -- any malpractice insurance he may have is going to

25  cover outright fraud.  So, that's our concern.

1          THE COURT:  What about -- one thing that has not been

2     stated in the pleadings and you just raised, Mr. Podesta, is

3     the issue of settlements.  Who is going to control what types

4     of settlements will be discussed with any potential defendants?

5     And I take it they're going to have to be brought before the

6     Bankruptcy Court in any event, but I'm not sure that's part of

7     the pleadings that you've filed so far.

8          MR. OSTRAGER:  Obviously Credit Suisse is going to

9     prosecute these actions on its own behalf, and we will consult

10    with Mr. Podesta as special counsel for the debtor.

11         THE COURT:  Wait.  You're not pursuing them on your

12    own behalf.  You're pursuing them on behalf of the creditors of

13    this estate.  You have a fiduciary --

14         MR. OSTRAGER:  Correct.

15         THE COURT:  You're picking up a fiduciary duty to the

16    creditors of this estate in this action.

17         MR. OSTRAGER:  We understand that.

18         THE COURT:  Okay.

19         MR. OSTRAGER:  We understand that we are prosecuting

20    this on behalf of the estate, and we understand that any

21    settlements that we reach has to meet Bankruptcy Court

22    approval.

23         THE COURT:  All right.

24         MR. OSTRAGER:  We also, you know, have the option of

25    -- as reflected in our papers, of terminating the prosecution

25

1  of these cases if we conclude, in our derivative capacity, that

2  it's no longer in the interest of the estate for us to pursue

3  them.  And again, we'll do this in consultation with Mr.

4  Podesta and the estate.

5          THE COURT:  All right.  Mr. Podesta?

6          MR. PODESTA:  I believe that my understanding is

7  similar, Your Honor, that CSFB will be taking the lead role.

8  But I presume they will consult with the debtor concerning

9  potential settlements, and of course any settlement, I guess,

10 would be a Rule 9019 settlement that would have to be approved

11 by the Bankruptcy Court on notice.

12         THE COURT:  All right.  Why don't I get from you

13 folks, when you have an opportunity to talk out the specific

14 language that you want in the order, an order on a

15 certification of counsel?

16         MR. OSTRAGER:  We will do that.  And thank you, Your

17 Honor.

18         THE COURT:  All right.

19         MR. PERNICK:  Your Honor,  believe that takes us to

20 number ten.

21         THE COURT:  Mr. Podesta -- I mean, Mr. Podesta, I'm

22 sorry.  Mr. Pernick.  Give me just a second.

23         MR. PERNICK:  That's all right, Your Honor.  I'm

24 flattered by the comparison.

25         MR. PODESTA:  I'm glad it's on the record.

**J&J COURT TRANSCRIBERS, INC.**

1                          (Laughter)

2              THE COURT:  Okay, Mr. Pernick.  Thank you.

3              MR. PERNICK:  Your Honor, we talked last time, and we

4    have since the last hearing actually done a comparison of Court

5    Call versus the current conference call vendor that we use, and

6    just to give you what I think our conclusion is, and we can

7    send the Court -- and probably -- it would probably be better,

8    if the Court wants it, we'll file some kind of certification

9    with a chart that we did attached just so every party that's

10   interested can see it, but the Court also.

11              But the biggest difference is, if I can summarize it,

12   seems to be the cost benefit of the current vendor actually

13   versus Court Call.  And what we did was we did a chart looking

14   at the May, June, August, October, November, and December

15   hearings, and just to give the Court one example, but they all

16   run pretty much the same, the total cost of the current vendor

17   for the December 20 hearing was $361.  The total cost using

18   Court Call would have been about $1,500.

19              Now, the reason for that is the current vendor that

20   we use just charges by the minute by each -- for the total

21   number of participants.  Court Call charges a fee based on how

22   long the call actually lasts, whether you participate or not.

23   And so, if you sign up ahead of time and you don't end up on

24   the call, they charge for that.  The current vendor does not.

25              One of the big differences, I guess, is that under

**J&J COURT TRANSCRIBERS, INC.**

1 the current system the debtor paid the entire cost of the call,

2 and using Court Call the debtor would not pay the entire cost,

3 although as the Court is well aware, the debtor is paying for a

4 number of the participants in this case.  I don't think it

5 would cut it down two-thirds, or even a half, but it wouldn't

6 -- it's not fair to compare these two numbers, because the

7 debtor in all fairness, under Court Call, would not pay that

8 entire, for example, for the December hearing, $1,500.

9        The other, I guess, major difference is, with Court

10 Call is, I think the Court knows, if you don't tell the

11 conference call service in advance that you want to participate

12 as opposed to listening, you cannot participate if you change

13 your mind, because they either plug you in or they don't,

14 actually, for your specific matter, to speak; whereas on the

15 current system, obviously people are on the call, and if

16 something comes up that they want to speak about they can.

17 Now, the down side of the current system is that you get,

18 sometimes, background noise and, you know, people being on hold

19 and that kind of thing, which I know has been a problem for the

20 Court on some of our calls.  But those are the main

21 differences.  I guess the one other difference is right now

22 under the Court's procedures we have to advise the Court, and

23 people have to tell us in time so we can do it, seven days in

24 advance of who is going to participate, and I think the Court

25 Call system is 48 hours, or two days.  But again, that's the

1 Court's actual procedure, so maybe the seven days would apply

2 to Court Call also.  I just don't know.

3      THE COURT:  Okay.  Well, what's the debtor's choice

4 in terms of what you want to do?

5      MR. PERNICK:  Well, I think unless the Court has a

6 problem with the current service, I would say that we stick

7 with that just because I think it's been working relatively

8 well.  And if at any hearing, or after any hearing the Court or

9 the other parties feel that there's a big problem and we should

10 switch, we'll be happy to.  But I think it's a little more

11 efficient for the debtor to just pay for the call, and it's one

12 of the benefits, or maybe down sides of being in bankruptcy in

13 this case that, you know, we're going to pay for the call for

14 people who want to participate to participate.

15      I will say one other thing, which is I was not aware

16 until we did this chart that there actually are a fair number

17 of people who say that they're going to participate in the call

18 and they don't end up doing that.  So, that is probably a

19 little bit of a cost that under the current system the debtor

20 is bearing, whereas under the Court Call service that would

21 probably be split because some of those people might be

22 constituents that we're paying for, and some of them may be

23 people who have to pay it themselves.  But I think we can

24 probably deal with that issue a different way.  I don't think

25 it really effects which service we pick.

1          THE COURT:  All right.  Well, if the debtor is

2    content to continue the same system as is currently in place,

3    that's all right with me.  I think you're correct that we can

4    always change it at any point in time if there is an issue that

5    arises.  So, if that's the case then we'll just keep this

6    process as it is.

7          MR. PERNICK:  Would you like us to file a

8    certification of counsel with the chart just so it's of record?

9    Or is it not -- does nobody really -- it doesn't matter?

10         THE COURT:  I don't know that it really matters much,

11   unless somebody wants to see it.  I accept your representation

12   that you did the analysis, and it's significantly less costly

13   overall this way, although maybe not to the debtor,

14   specifically.  Ms. Eskin?

15         MS. ESKIN:  Your Honor?  Marla Eskin, Your Honor.  We

16   certainly have no objection to continuing the procedure as it

17   is now.  There's just one issue.  In -- the asbestos cases are

18   generally heard all in one day.  Many of the cases are now

19   using Court Call, where it's a 48-hour notice.  The procedures

20   in this case are seven days notice for telephonic appearances.

21   Often in these cases we have attorneys from out of state, and

22   in particular in our case, Caplin and Drysdale, who may be

23   coming in for other cases and will come in for this case.  We

24   find out a couple of days, you know, a day or two ahead of time

25   things were resolved in the other cases and it's too late to

**J&J COURT TRANSCRIBERS, INC.**

30

participate telephonically in this case. To be brief, there
may be some confusion because it's still seven days for
telephonic appearance in this case and in the other asbestos
cases it's 48 hours notice. Is it possible for us to contact
Mr. Pernick's office 48 hours in advance for telephonic
appearance in this case? I've talked with Mr. Pernick --

THE COURT: The problem that I'm having is that I
don't get the information soon enough. In fact, I'm thinking
about extending the number of days for Court Call, because I
don't get lists of who is participating. In fact, for one of
the Court Call proceedings today I got it this morning, and as
a result my staff doesn't have an opportunity to update the
notes because they come in -- this information comes in right
before the hearing. So, I'm dealing with that administratively
internally within my office. But I'm thinking about expanding
that period for Court Call as a result of the problem that it's
creating getting ready for Court, as opposed to shortening it
in this case.

MS. ESKIN: Okay. Then I'll wait and see what
happens. Maybe we can, if possible, make it consistent. You
may make it seven days, and then we won't have an issue. So,
I'll just wait and see what happens.

THE COURT: Okay. But I cut you off. You said you
talked to Mr. Pernick, and?

MS. ESKIN: Oh. There's no objection from his end if

1  it's 48 hours, so long as we do get to his office within 48

2  hours so he can get the information timely to your office.

3          THE COURT:  Okay.  Hold on a second.  If we get the

4  information 48 -- you know, the next day, in advance, and we

5  don't put it on preceding memos, but simply attach the e-mail

6  notice, is that --

7                    (Judge confers with clerk)

8          THE COURT:  Oh, okay.  That probably will still work,

9  if the e-mail list can be sent to my office the say that

10 they're due, which I guess would be at least, what, 30 --

11         MR. PERNICK:  Your Honor, I think you've got to do

12 two business days, because if -- we typically have hearings on

13 Monday --

14         THE COURT:  That's the problem.

15         MR. PERNICK:  -- 48 hours would be Friday.  You're

16 not going to get it in time.

17         THE COURT:  Yes, that's the problem.  In fact, I

18 think that's the whole issue with all these Monday hearings,

19 and most of these cases come up on Monday, which may be the

20 problem.  So, I don't have any objection trying to work with

21 it, too, but I do need the list before Monday morning, so I

22 guess I need it Friday.

23         MR. PERNICK:  I would just -- just in case you change

24 some of your dates, I would suggest just two business days in

25 advance is the cut off.

**J&J COURT TRANSCRIBERS, INC.**

32

1          THE COURT:  Yes, I agree with that, Mr. Pernick.  I

2  was just trying to use that as an example, that I would need it

3  at least Friday, not the day of the hearing, but at least a day

4  in advance.  So, two business days in advance of the hearing is

5  fine.

6          MR. PERNICK:  Yes.  So, if they notify us two

7  business days, that's Thursday, and then we have it to you by

8  Friday morning, that will probably work.

9          THE COURT:  That's fine.  Okay.  We'll try that, Mr.

10  Pernick, and see if it works.

11          MR. PERNICK:  Okay.  And if it's not at any time, as

12  the Court knows, if you wish to change it, that's fine with us.

13          THE COURT:  Okay.

14          MR. PERNICK:  That takes us to the last item on the

15  agenda, which is item number 11.  It's the debtor's emergency

16  motion for the entry of an interim and final order pursuant to

17  Sections 105, 362, and 541 of the Code limiting certain

18  transfers of equity securities of the debtors, and approving

19  related notice procedures.  We filed this on February 23.  It's

20  docket number 14555.  And as the Court is aware, this motion is

21  only on for an interim hearing this morning.  Where they

22  proposed final hearing to be held, we proposed, at the April

23  omnibus hearing date, to provide enough notice time for anybody

24  who wishes to be heard to be heard, and I guess if somebody in

25  the interim had some kind of emergency objection we obviously

**J&J COURT TRANSCRIBERS, INC.**

1  would have no objection to them trying to bring that to the

2  Court earlier.  This is a motion that, as the Court I believe

3  is aware, is getting filed more and more frequently in cases of

4  large public companies, and I suspect that Your Honor is

5  familiar with the relevant issues, but if you want I'd like to

6  just take you through some of the hot points.  I'm actually not

7  sure whether we have any objections, or even parties appearing.

8  Maybe that's the first question, because it was an emergency

9  motion.  There was no objection date.  The parties are just

10  supposed to appear in Court today or on the phone to voice any

11  issues that they might have.

12         THE COURT:  All right.  Does anyone have an objection

13  to going forward with the debtor's motion at agenda number 11

14  on an emergency basis today for interim relief?  There's no

15  objection, Mr. Pernick, and I am familiar with the issues.

16  I've entered these orders in at least one, probably two or

17  three of the Delaware cases recently.

18         MR. PERNICK:  Yes, Your Honor.  I guess there are a

19  couple things that I'd just like to point out to the Court.

20  This motion that we're asking for is similar to Grace but not

21  exactly the same, and we actually have set our limit at a

22  little bit below just so we have a little leeway, and we

23  propose that anyone with at least a 4.75 percent interest of

24  Owens Corning stock file a notice to that effect with the

25  Court.  We've proposed a form of notice attached as Exhibit A1

1  -- I'm sorry, 1A.  And second, anyone who is a 4.75 percent

2  owner or who would become an owner, we call them substantial

3  equity holders as a result of the acquisition of Owens Corning

4  stock would need to give the debtors prior notice of any

5  proposed acquisition of that stock through the form of notice

6  that is attached in Exhibit 1B.  We would then have 15 days to

7  object to that acquisition.  If we don't object, the

8  acquisition could not proceed unless permitted by the Court.

9  If we do object, that objection would actually tee up a

10 hearing, and so, it is our burden to basically get it to the

11 Court by filing that objection.  We do not shift the burden or

12 put that burden on the equity holder.  Their only burden is to

13 file the notice, and then we have to object or not object.

14         We've asked for this to be approved on an interim

15 basis with an order approving these procedures on a final basis

16 to be issued only after a notice to all parties and all

17 shareholders, and that they've all had an opportunity to

18 object.  And those are the two proposed forms of order that

19 we've attached to the motion.  One is the interim order and the

20 second one is the final order.  And we've suggested that in

21 order to give everybody appropriate notice the final hearing be

22 held at the April omnibus hearing, which is April 25, and that

23 parties have until April 8 to object to that motion, and that

24 is the normal objection date for the April hearing.

25         Just as far as notice is concerned, the Court should

1  know that we've already served this motion on the key parties

2  in this case, as well as all current substantial equity

3  holders.  There are two of those that have filed the

4  appropriate documents with the Securities and Exchange

5  commission.  We did that by e-mail or overnight delivery.  We

6  also served the entire 2002 list by regular mail, and we would

7  propose that notice of the motion and of the Court's entry of

8  the interim order on the motion be given to all shareholders

9  and other interested parties so that they can review it and

10  interpose any objections they might have.

11         I do have Mr. Mickeloneous -- Mr. Mickelonus in the

12  Court with me.  He is Owens Corning's Director of Taxation, in

13  case the Court has any questions beyond my presentation or

14  what's in the papers.  But unless the Court has any questions,

15  that concludes my presentation.

16         THE COURT:  No, I don't have any questions.  Does

17  anyone have any comments or concerns?

18         MR. LOIZIDES:  Yes.  Good morning, Your Honor.  Chris

19  Loizides for certain preferred shareholders, including Sanford

20  Bernstein.  I can't say I'm really familiar with this motion,

21  but I did have a question, and that is whether this procedure

22  was intended to apply to preferred shareholders.  My assumption

23  is not, but I'd ask Mr. Pernick just to clarify that.

24         MR. PERNICK:  Your Honor, this proposed procedure

25  just applies to common shareholders.

**J&J COURT TRANSCRIBERS, INC.**

1          MR. LOIZIDES:  Okay.  Thank you, Your Honor.

2          THE COURT:  All right.  Is the order clear, Mr.

3    Pernick, that it's -- I think it is, that it's only to common

4    stockholders.  I didn't read it as applying to preferreds, but

5    now that the question has come up maybe I just went by it too

6    fast.

7          MR. PERNICK:  I think it is, Your Honor, but if I can

8    indulge the Court, give me one moment, I will double check

9    that.

10          THE COURT:  All right.

11                         (Pause)

12          THE COURT:  Oh.  While Mr. Pernick is looking at

13    that, I think I skipped something on item four.  CSFB asked for

14    leave to file a reply or a rebuttal to the debtor's brief.  It

15    came in late and it exceeded the five pages that I permit in

16    any event; nonetheless, having already ruled and expecting to

17    get an order on that issue, I'm going to permit it in this

18    instance, but in the future please limit it to five pages.

19          MR. PERNICK:  Your Honor, I actually think the motion

20    is pretty clear, but the order does not specify it, so let us

21    send you a revised form of order so that people don't have to

22    look at the motion, which makes it clear that it applies to

23    common shareholders only.

24          MR. LOIZIDES:  I'd very much appreciate that, Your

25    Honor.

**J&J COURT TRANSCRIBERS, INC.**

37

1          THE COURT:  All right.  Thank you.

2          MR. PERNICK:  And we'll change the appropriate forms

3  of notice so that they're all consistent.

4          THE COURT:  Okay.  That's fine.  Just file it on a

5  C.O.C., Mr. Pernick, please.

6          MR. PERNICK:  Okay.  And, Your Honor, I think from

7  the debtor's perspective that's all we have.

8          THE COURT:  Okay.  Thank you.

9          MR. PERNICK:  Thank you very much.

10          THE COURT:  Anyone have any housekeeping matters?

11  All right.  We're adjourned.  Thank you.

12          MR. PERNICK:  Thank you.

13                    * * * * *

### C E R T I F I C A T I O N

         I, TAMMY DeRISI, court approved transcriber, certify

that the foregoing is a correct transcript from the official

electronic sound recording of the proceedings in the above-

entitled matter, and to the best of my ability.


_____  Date:  March 7, 2005

TAMMY DeRISI

J&J COURT TRANSCRIBERS, INC.




                    **J&J COURT TRANSCRIBERS, INC.**