UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

------------------------------------------------------------x
:
IN RE                                             :  Chapter 11
:
OWENS CORNING, et al.,                            :  Case Nos. 00-3837 to 3854 (JKF)
:  (Jointly Administered)
:
                                    Debtors.      :
:
:
------------------------------------------------------------x

**REPLY MEMORANDUM IN FURTHER SUPPORT OF CSFB'S MOTION
TO COMMENCE AN ADVERSARY PROCEEDING AGAINST CERTAIN
PHYSICIANS ON BEHALF OF THE DEBTORS' ESTATES**

TO:   THE HONORABLE JUDITH K. FITZGERALD,
      UNITED STATES BANKRUPTCY JUDGE

Credit Suisse First Boston ("CSFB"), as Agent for the pre-petition bank lenders to the Debtors, respectfully submits this Reply Memorandum in further support of CSFB's motion for authorization to commence derivatively on behalf of the Debtors' estates an adversary proceeding against certain B-readers (the "Motion To Proceed Derivatively"). CSFB's proposed complaint alleges that the named defendants, and other as-yet unidentified B-readers, falsely reported x-ray readings as positive for asbestos-related disease in support of asbestos personal injury claims that were paid by the Debtors pre-petition.

As indicated in its moving papers, CSFB is prepared to fund the proposed litigation on behalf of the debtors' estates and to seek reimbursement only out of any monies recovered. Accordingly, the Court's inquiry on this motion is "limited to ascertaining whether the proposed lawsuit has a colorable basis." *Unsecured Creditors' Comm. of Debtor STN Enter. v. Noyes*, 779 F.2d 901, 906 (2d Cir. 1985) ("Of course, if the creditors' committee represents that its fee arrangement with its attorney will in no event impose a net burden on the bankruptcy

estate (because the committee will pay the fee and seek reimbursement only out of any recovery), then the preliminary inquiry can be limited to ascertaining whether the proposed lawsuit has a colorable basis on which to proceed.").

### A. Hypothetical Counterclaims Against The Debtor Are Irrelevant To Determining Whether A Proposed Derivative Lawsuit Has A Colorable Basis

Critically, Owens Corning does *not* deny that CSFB's proposed fraud claims against B-readers may have merit. Rather, the debtors concede that "[i]t is possible that evidence supporting the proposed fraud claims will be developed during the silica [MDL] litigation" in Corpus Christi, Texas, in which many of the same B-readers "have been accused of questionable screening practices" and the judge "has expressed concern that there may have been fraud in connection with the medical diagnoses of silica claimants, and has ordered all four of the proposed defendants to testify in her courtroom, in her presence, in the middle of February." Debtors' Response And Conditional Opposition, at 3, 10.

Owens Corning's "conditional opposition" to the filing of a lawsuit against B-readers on its own behalf is premised solely on a fear that the estate would be subject to unspecified counterclaims—although "[t]he Debtor agrees that counterclaims would be without merit." Debtors' Response And Conditional Opposition, at 17. Accordingly, Owens Corning concedes that it would have no opposition to the suit if CSFB agrees to "indemnify the Debtor, its directors, officers, agents, professionals and employees against any costs or expenses, including legal fees, relating to counterclaims brought by the defendants." *Id.* at 19.

A fear of speculative and unspecified counterclaims against the debtor might accompany the filing of any lawsuit by or on behalf of the estate. Tellingly, Owens Corning cites not a single case for the proposition that a debtor's indemnification against counterclaims is a relevant factor in deciding whether to authorize a derivative action—let alone the determinative

factor (as Owens Corning urges). In fact, hypothetical counterclaims are not relevant to the Court's determination of whether the claims CSFB seeks to advance have "a colorable basis" and should be pursued. To determine whether a proposed derivative claim is colorable, courts look simply to the allegations that the movant has proposed and the debtor has refused to prosecute, applying a motion to dismiss standard. *See, e.g., In re G-I Holdings, Inc.*, 313 B.R. 612, 631 (Bankr. D.N.J. 2004).

Owens Corning's fear of counterclaims here is premised on the fact that counterclaims were filed in connection with lawsuits Owens Corning pursued in 1996 and 1997 against Pulmonary Function Testing laboratories. According to Owens Corning, those counterclaims were based on the very filing of Owens Corning's lawsuit and alleged "abuse of process" causing interference with defendants' businesses. Debtors' Response And Conditional Opposition, at 7. However, as Owens Corning itself properly concedes, such a claim would be baseless here. *Id.* at 17.[1] While the debtors suggest "there is always the possibility of a large adverse judgment if a claim is able to get to a jury," they ignore the fact that any counterclaim would, by definition, be presented in the very adversary proceeding authorized by this Court. *Id.* The suggestion that a patently meritless counterclaim would be permitted to deplete the estate—especially when the suit alleged to be an abuse of process would have been authorized by the Court—is not well taken.

---

[1] It bears mention that the estate's right to seek redress from the judicial system for wrongs that may have been inflicted upon it is constitutionally protected. *See Bounds v. Smith*, 430 U.S. 817, 828 (1977) (access to the courts is a fundamental constitutional right); *Ins. Co. v. Morse*, 87 U.S. 445, 451, 453-54 (1874) (a corporation is a citizen of the state by which it is created and "[e]very citizen is entitled to resort to all the courts of the country, and to invoke the protection which all the laws or all those courts may afford him"); *cf.* Del. Const., Art. 1, § 9. To sustain a claim for abuse of process, some form of *coercion* to obtain a collateral advantage, not properly involved in the proceeding itself, must be shown. *Nix v. Sawyer*, 466 A.2d 407, 412 (Del.Super.1983) (citing Prosser, *Law of Torts*, § 121 (4th Ed.1971)).

In short, Owens Corning's fear about pursuing viable claims because of hypothetical and baseless counterclaims is unfounded. Moreover, costs expended in defending against such baseless counterclaims, were they to be filed, are likely to be minimal since it is CSFB's counsel that would primarily be involved in the lawsuit and any discovery as to alleged abuse in bringing the action would be directed at CSFB's motives. In all events, defense costs incurred in defending against baseless counterclaims are properly recovered not from CSFB but from the defendants that improperly asserted them. Just as the lawsuit CSFB proposes to file is subject to Rule 11's requirement of a good faith basis, so too are any counterclaims. Should counterclaims be filed that have no merit and no purpose other than "to harass or to cause unnecessary delay or needless increase in the cost of litigation," the trial court would unquestionably have the power to remedy such an abuse of the legal system by fully shifting the cost to the offending parties. Fed. R. Civ. P. 11; *See, e.g., Edwards v. Wyatt*, No. CIV.A. 01-1333, 2001 U.S. Dist. LEXIS, at *17-18 (E. D. Pa. Nov. 5, 2001) (imposing Rule 11 sanctions on defendant's counsel for bringing counterclaims that were "clearly baseless" and stating that "the court will not excuse such blatant lack of diligence" or bad faith) (Ex. 1); *Hudson v. Moore Business Forms, Inc.*, 827 F.2d 450, 453 (9th Cir. 1987) (court ordered defendant to show cause why Rule 11 sanctions should not be imposed for wholly frivolous counterclaim brought for the improper purpose of harassing plaintiff into dropping the case and deterring others from bringing suit).

Owens Corning and its officers and directors owe fiduciary duties to creditors to maximize the value of the bankruptcy estate. *See Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 573 (3d Cir. 2003); *Geyer v. Ingersoll Pubs. Co.*, 621 A.2d 784, 787 (Del Ch. 1992). It is simply inconsistent with the fiduciary duties of a debtor-

in-possession and its officers and directors to demand their own indemnification from a creditor against baseless and hypothetical counterclaims as the price for giving consent to the creditor to prosecute colorable claims on the estate's behalf that may increase the assets available to pay creditors:

> A creditor's interests in a Chapter 11 context are not protected where the debtor-in-possession fails to fulfill its obligation to collect property of the estate. If a valid--and potentially profitable--cause of action exists under state law which the debtor-in-possession may assert on behalf of the corporation, *all* creditors are harmed when the debtor-in-possession refuses to pursue it. The value of the estate is not maximized and the ultimate recovery of all creditors is diminished.

*La. World Exposition v. Federal Ins. Co.*, 858 F.2d 233, 249 (5th Cir. 1998).

Owens Corning has conceded that CSFB's proposed lawsuit may have merit and that hypothetical counterclaims would not. As Owens Corning itself observes, B-reader fraud is already the subject of related litigation in Texas in which the judge "has expressed concern that there may have been fraud in connection with the medical diagnoses of silica claimants." Debtors' Response And Conditional Opposition, at 10. Yet Owens Corning's proffered course of action is simply to watch someone else's discovery unfold and potentially change its mind about suing B-readers later, depending on what develops in the silica case, rather than pursue its own litigation and take its own discovery now. Respectfully, that cannot be the appropriate course for maximizing the value of the estate, particularly in light of the statute of limitations issues that Owens Corning raises in its brief.

B.  **Significant New Evidence Supports CSFB's Proposed Lawsuit And Implicates A Potentially Substantial Recovery**

In opposing CSFB's proposed lawsuit against B-readers, Owens Corning pretends as if the lawsuit seeks to challenge the same x-ray readings, based on the same evidence, that Owens Corning considered but decided against pursuing in connection with its 1996 and 1997

lawsuits against PFT laboratories. That is simply not true. The proposed allegations in CSFB's draft complaint, on their face, are premised on the May 2002 Report of Dr. Gary Friedman, which revealed for the first time—less than three years ago—that up to 87% of the several hundred thousand non-malignant personal injury claims settled and paid by the debtors *after* 1997, which totaled billions of dollars, were unsubstantiated by adequate medical documentation.

Further, while Owens Corning concluded in 1997 that it did not have a claim for fraud based on the alleged subjectivity of x-ray analysis, the Friedman Report specifically concluded that the results obtained in the 2002 study could *not* be explained away by subjective variation among different B-readers. In short, the 2002 Friedman Report is new and different evidence than Owens Corning considered in 1996 or 1997 and implicates different asbestos claims settled and paid by Owens Corning and Fibreboard under their respective NSP programs *after* 1997.[2]

### C.   The Statute Of Limitations Provides No Basis For Denying CSFB's Motion For Derivative Standing

Unless it is apparent on the face of CSFB's proposed complaint that the statute of limitations bars the lawsuit, it would be inappropriate to deny CSFB's motion for derivative

---

[2] In a footnote, Owens Corning questions whether the proposed B-reader defendants are in sufficient privity with the debtors that they owe a duty not to negligently misrepresent x-ray readings. Debtors' Response And Conditional Opposition, at 15, n.8. Delaware courts, which have adopted Section 552 of the Restatement (Second) of Torts, do "not require[] that the person who is to become the plaintiff be identified or known to the defendant as an individual when the information is supplied. . . . [I]t is enough that the maker of the representation intends it to reach and influence either a particular person or persons, known to him, or a group or class of persons . . . ." *Carello v. PricewaterhouseCoopers LLP*, No. Civ. A. 01C-10-219RRC, 2002 Del. Super. LEXIS 180, at *20 (Del. Super. July 3, 2002)(Ex. 2). As alleged in CSFB's proposed complaint, "[w]hen B-readers interpret x-rays for asbestos-related disease, they know they are doing so for purposes of providing 'independent' and professional medical documentation necessary to substantiate an asbestos personal injury claim that will be filed against an asbestos defendant" such as Owens Corning and Fibreboard. Proposed Complaint (Exhibit B to CSFB's Motion), at ¶ 39.

standing based on a <u>fact-intensive</u> affirmative defense that CSFB has had no discovery of and no chance to oppose and disprove. *See In re G-I Holdings, Inc.*, 313 B.R. 612, 631 (Bankr. D.N.J. 2004) (applying motion to dismiss standard to determine whether a creditor committee's derivative suit had a colorable basis; holding that an affirmative defense is a bar to the action only "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense"); *see also Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312 (Del. 2004) (expressing reluctance to dismiss actions based on statute of limitations grounds that turn on fact-intensive tolling doctrines); *In re Exide Technologies, Inc.*, 299 B.R. 732, 752 (Bankr. D. Del. 2003) (a plaintiff has no burden to plead facts in its proposed complaint in anticipation of an affirmative defense). As the Third Circuit has stated, "[w]hether a party has standing to bring claims and whether a party's claims are barred by an equitable defense are two separate questions, to be addressed on their own terms." *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 346 (3d Cir. 2001).

      On its face, the proposed complaint is based on the May 2002 findings of Dr. Gary Friedman. Owens Corning confirms that as of 1997, after careful investigation, Owens Corning concluded that it did not have a factual basis for a fraud claim against B-readers at that point in time. Whether or not Owens Corning was put on notice of a viable fraud claim after 1997 but at some point before the May 2002 Friedman report is a fact-intensive question. It cannot dictate whether CSFB has standing to prosecute the proposed lawsuit and take discovery in the first place to find out when the applicable limitations period commenced to run. *See, e.g., Krug v. Beebe Med. Ctr.*, No. Civ. A. 02C-06-093, 2003 Del. Super. LEXIS, at *3-4 (Del. Super. Sept. 30, 2003) (Ex.3).

## CONCLUSION

For the foregoing additional reasons, CSFB respectfully requests that the Court grant the Motion To Proceed Derivatively and enter an order authorizing CSFB to commence an adversary proceeding on behalf of the debtors' estates.

Dated:    February 18, 2005

                                        LANDIS RATH & COBB LLP

                                        Richard S. Cobb (I.D. No. 3157)
                                        Rebecca L. Butcher (I.D. No. 3816)
                                        919 Market Street, Suite 600
                                        Wilmington, Delaware 19801
                                        Tel: (302) 467-4400
                                        Fax: (302) 467-4450

                                        *Attorneys for Credit Suisse First Boston, as Agent*

Of Counsel:

Barry R. Ostrager
Tyler B. Robinson
Robert J. Pfister
Katharine E. Nolan

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017-3954
Tel: (212) 455-2000
Fax: (212) 455-2502